UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------X

MARCUS BRIAN JAINARINE BISRAM,

                Petitioner,

   - against -

WARDEN HERMAN QUAY of METROPOLITAN
DETENTION CENTER and UNITED STATES OF
AMERICA,

                Respondents.

-----------------------------------------X

**MEMORANDUM & ORDER**

17-cv-6730 (KAM)

**MATSUMOTO, United States District Judge:**

On November 17, 2017, petitioner Marcus Brian
Jainarine Bisram ("petitioner" or "Bisram") filed the above-
captioned petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2241, challenging Magistrate Judge Kuo's Certificate of
Extraditability and Order of Commitment. For the reasons stated
below, the petition is DENIED.

**BACKGROUND**

## I.   <u>Extradition Proceedings</u>

Petitioner is a United States citizen. (17-MJ-597,
ECF No. 10 at 2.)[1] By complaint filed on July 5, 2017, the
United States government sought the extradition of petitioner to
Guyana. (17-MJ-597, ECF No. 1.) According to the complaint, on
March 7, 2017, a Guyanese court issued a warrant for

---

[1] The court refers to the page numbers assigned by the Electronic Court Filing
("ECF") System.

petitioner's arrest.[2]  (*Id.* ¶ 5.)  The warrant alleged that petitioner hosted a party at his house in Guyana on October 31, 2016.  (*Id.* ¶ 6(a).)  At that party, petitioner approached Fiayaz Narinedatt (the "victim") and touched the victim's body, including his penis and buttocks.  (*Id.*)  In response, the victim slapped petitioner numerous times.  (*Id.*)  Petitioner left the victim and went over to five other guests and told them to kill the victim.  (*Id.*)  Those guests proceeded to beat the victim, first on petitioner's yard and then on the road, while petitioner stated again that the guests should beat the victim until he was dead.  (*Id.* ¶ 6(b), (c).)  Two of the guests beat and threw the victim into a drain, and the other two removed him from the drain, placed him in the trunk of a car, and drove off.  (*Id.* ¶ 6(c).)  On November 1, 2016, the victim's dead body was found on a road in Guyana and an examination revealed that the causes of death were "cerebral hemorrhage with multiple skull fractures, spinal fracture, ruptured spleen and liver, fractured arm, and pulmonary contusions."  (*Id.* ¶ 6(d).)

In addition to the complaint, the government submitted three exhibits.  The first exhibit included, *inter alia*, information regarding the extradition treaty between the United

---

[2] The original information and warrant for petitioner's arrest were issued on November 24, 2016.  (17-MJ-597, ECF No. 8-1 at 137-38.)  They were dismissed on March 6, 2017, and then reinstated on March 7, 2017.  (*Id.* at 138; *see also* ECF No. 10-2, Affidavit of Sanjeev J. Datadin ("Datadin Aff.") ¶ 4.)

States and Guyana (17-MJ-597, ECF No. 1-1, Ex. 1 at 2-4), the
Guyanese Ministry of Foreign Affairs' Extradition Request for
petitioner with respect to "the offense of Murder . . .
accessory before the fact" (*id.* at 5-9), and a statement by a
Guyanese police officer describing the eyewitness statement of
Chaman Chunilall ("Chunilall") (*id.* at 49-52, 55).  The second
exhibit included, *inter alia*, handwritten statements by
witnesses implicating petitioner in the murder of the victim and
a forensic report regarding the victim.  (17-MJ-597, ECF No. 1-
2, Ex. 2.)  The third exhibit included, *inter alia*, statements
from criminal investigators and police force members describing
their investigation of the underlying crime (17-MJ-597, ECF No.
1-2, Ex. 3, 1-6), the Guyanese warrant for petitioner's arrest
(*id.* at 12, 14, 33), and a statement confirming that Chunilall
identified petitioner in a photograph as the person he described
in a prior statement as ordering others to beat and kill the
victim (*id.* at 22).

The extradition matter was assigned to Magistrate
Judge Kuo.  Magistrate Judge Kuo held two hearings regarding
petitioner's extradition – on September 26, 2017 and October 2,
2017.  (17-MJ-597, ECF entries dated 9/26/17, 10/3/2017; ECF No.
19, Transcript of September 26, 2017 Hearing ("9/26/17 Tr.");

ECF No. 20, Transcript of October 2, 2017 Hearing ("10/2/17 Tr.").)

In petitioner's submissions to the court regarding extradition, he referenced various ongoing proceedings in Guyanese courts regarding the underlying criminal matter. (17-MJ-597, ECF Nos. 7, 12.) In a letter dated September 7, 2017, petitioner's counsel represented that there had "been a complete recantation in the court of the main witness against Mr. Bisram in this matter," and that petitioner's local Guyanese counsel was therefore moving to "quash the charges against" petitioner in Guyana. (17-MJ-597, ECF No. 12.) Counsel similarly represented to Magistrate Judge Kuo at hearings on September 26, 2017 and October 2, 2017, that the Guyanese court was considering dismissing the charges. (17-MJ-597, ECF No. 19, 9/26/17 Tr. at 4-5; ECF No. 20, 10/2/17 Tr. at 3.) The United States government has represented that "were there not to be charges in Guyana, . . . the Department of State would not extradite the defendant in this case." (17-MJ-597, ECF No. 19, 9/26/17 Tr. at 6.)

At the September 26, 2017 hearing, petitioner's counsel argued that the witnesses had "recanted their testimony" and, as a result, "their credibility has become a grave problem to the prosecution in Guyana." (*Id.* at 3.) At the hearing on October 2, 2017, petitioner's counsel argued that the three

eyewitness accounts provided in support of extradition are
unreliable.  He argued that two were given under "coercion and
duress," subsequently recanted in court, and quashed by the
Guyanese court.  (17-MJ-597, ECF No. 20, 10/2/17 Tr. at 19-20.)
He explained that the third eyewitness account, from Chunilall,
is unreliable because it was given by a sixteen-year old who
cannot read or write, placed his thumbprint on a statement that
he did not understand, and identified petitioner at his mother's
direction.  (*Id.* at 20-22.)

On October 10, 2017, petitioner filed a letter
informing the court that the Guyanese judge had "reserved
decision on dismissal until October 30, 2017."  (17-MJ-597, ECF
No. 15.)  Two days later, on October 12, 2017, Magistrate Judge
Kuo issued a Certificate of Extraditability and an Order of
Commitment.  (17-MJ-597, ECF No. 17, Certificate of
Extraditability and Order of Commitment.)

## II.  **Instant Action**

On November 17, 2017, petitioner filed the instant
petition for a writ of habeas corpus challenging Magistrate
Judge Kuo's Certificate of Extraditability.  (ECF No. 1,
Petition ("Pet.").)  The petition was fully briefed as of April
28, 2018.  On May 22, 2018, petitioner requested an evidentiary
hearing to present testimony from the "witnesses accusing Mr.
Bisram" (ECF No. 12, Request for Evidentiary Hearing), which the

government opposed on June 6, 2018 (ECF No. 13, Opposition to Request for Evidentiary Hearing).

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3184, a magistrate judge may consider evidence of criminality and the applicable extradition treaty to determine whether an individual may be extradited to a foreign nation. If a magistrate judge finds that an individual is extraditable, she must "certify . . . to the Secretary of State[] that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention[.]" 18 U.S.C. § 3184. The Secretary of State has final and discretionary authority to extradite the fugitive. 18 U.S.C. §§ 3184, 3186; *see also Lo Duca v. United States*, 93 F.3d 1100, 1103 (2d Cir. 1996) ("[T]he Secretary of State has final authority to extradite the fugitive, but is not required to do so.").

Extradition orders "may only be reviewed by a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Skaftouros v. United States*, 667 F.3d 144, 157 (2d Cir. 2011). On collateral review of an extradition order, the district court may only "inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence

6

warranting the finding that there was a reasonable ground to believe the accused guilty." *Id.* (internal quotation marks omitted) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Although the district court is not "expected to wield a rubber stamp," *id.* at 158, "[t]he scope of such review is limited and should not be converted into a de novo review of the evidence," *Melia v. United States*, 667 F.2d 300, 302 (2d Cir. 1981). Additionally, the Second Circuit has held that "in order to merit habeas relief in a proceeding seeking collateral review of an extradition order, the petitioner must prove by a preponderance of the evidence that he is in custody in violation" of 18 U.S.C. § 3184 or the applicable extradition treaty. *Skaftouros*, 667 F.3d at 158 (internal quotation marks omitted).

## DISCUSSION

Throughout the proceedings, petitioner has maintained consistently that he is not challenging the court's jurisdiction to preside over the matter of extradition (*see, e.g.*, 17-MJ-597, ECF No. 10 at 1; ECF No. 1, Pet. at 6), but that he is challenging whether there was probable cause to warrant extradition (*see, e.g.*, 17-MJ-597, ECF No. 19, 9/26/17 Tr. at 10-11; ECF No. 1, Pet. at 9-12). His position with respect to the existence of a valid extradition treaty between the United States and Guyana, however, has been inconsistent. The court

7

first addresses the issue of a valid treaty and then addresses the sufficiency of the evidence.

## I. **Extradition Treaty**

In papers submitted to Magistrate Judge Kuo, petitioner initially argued that there is not a valid extradition treaty between the United States and Guyana. (17-MJ-597, ECF No. 10 at 6.) However, at two subsequent hearings, petitioner's counsel implicitly conceded that a valid extradition treaty exists between the United States and Guyana by confirming that the only issue for Magistrate Judge Kuo to decide was that of probable cause. (17-MJ-597, ECF No. 19, 9/26/17 at 10 ("The only dispute . . . we have, Judge, is the probable cause."); ECF No. 20, 10/2/17 Tr. at 11-12 ("THE COURT: We're only talking about probable cause, is that right? [PETITIONER'S COUNSEL]: Yes, your Honor.").)

Similarly, in the instant habeas action, petitioner initially challenged the existence of a valid treaty. (ECF No. 1, Pet. ¶ 11 ("The Supreme Court of Guyana has called into doubt the Treaty.").) In his reply brief to the government's opposition, however, petitioner appears to have again conceded the treaty issue, stating that his "challenge to his extradition is a limited challenge: the question before the court is whether

there is probable cause to try the accused, not whether he is guilty." (ECF No. 10, Petitioner's Reply ("Pet. Reply") at 4.)

The Second Circuit has held that extraditees waive non-jurisdictional challenges on habeas review by failing to raise such issues at their extradition hearings. *See Lo Duca*, 93 F.3d at 1111 (finding extraditee waived non-jurisdictional objection by failing to raise the objection at the extradition hearing); *Jhirad v. Ferrandina*, 536 F.2d 478, 486 (2d Cir. 1976) ("Non-jurisdictional objections must, of course, be timely raised or they are waived."); *see also Austin v. Healey*, 5 F.3d 598, 604 n.4 (2d Cir. 1993) (declining to consider non-jurisdictional argument made for the first time on appeal). Because petitioner clearly abandoned his challenge to the existence of a valid treaty at the extradition hearing, the court finds that petitioner has waived his right to raise the issue in his habeas proceedings. Similarly, Magistrate Judge Kuo did not err by not addressing the issue of the validity of an extradition treaty.

Assuming, *arguendo*, petitioner had not waived the issue of a valid treaty, the court would nonetheless find that one exists. "The question whether power remains in a foreign state to carry out its treaty obligations is in its nature political and not judicial, and the . . . courts ought not to interfere with the conclusions of the political department in

that regard." *In re Extradition of Sacirbegovic*, No. 03-cr-01,
2005 WL 107094, at *10 (S.D.N.Y. Jan. 19, 2005) (alteration in
original) (internal quotation marks omitted) (quoting *Terlinden
v. Ames*, 184 U.S. 270, 288 (1902)). Accordingly, circuit courts
that have considered whether a valid treaty continues to exist
between the United States and another country have "typically
deferred to the executive branch's determination." *Id.*
(collecting cases).

The United States signed an extradition treaty with
the United Kingdom on December 22, 1931 (the "Treaty"), while
Guyana was under the United Kingdom's control. (17-MJ-597, ECF
No. 1-1, Declaration of Susan R. Benda ("Benda Decl.") at 2 ¶
3.) The Treaty remained in effect after Guyana obtained its
independence from the United Kingdom. (*Id.*; 17-MJ-597, ECF No.
11-1, Declaration of Tom Heinemann ("Heinemann Decl.") at 2 ¶ 2;
*see also* ECF No. 1-2, *In the Matter of Barry Dataram*, 2008 No.
59-APL (Sup. Ct. Judicature, Civil Juris., Guyana 2008) (noting
Guyana succeeded to the 1931 extradition treaty between the
United States and the United Kingdom).) The United States
Executive Branch has unambiguously stated that it considers the
Treaty to be in effect. (17-MJ-597, ECF No. 11-1, Heinemann
Decl. ¶¶ 2-8; 17-MJ-597, ECF No. 1-1, Benda Decl. ¶ 3.)
Moreover, the Treaty contains a mechanism for termination, which
has not been employed. (17-MJ-597, ECF No. 11-1, Heinemann

Decl. ¶ 3-5.) Petitioner's unsupported and intermittent arguments that the Treaty has been "called into doubt" are unconvincing and not proper for the judiciary to address, especially given the clear position of the Executive Branch. For these reasons, the court finds that a valid extradition treaty exists between the United States and Guyana.

## II. **Sufficiency of the Evidence**

Petitioner argues that the evidence before Magistrate Judge Kuo failed to establish probable cause that he committed the crime with which he has been charged. The court disagrees. In support of his argument, petitioner makes three arguments, which the court addresses in turn.

### A. Criminal Charges in Guyana

In his petition, petitioner argues that Magistrate Judge Kuo lacked probable cause because there are no criminal charges pending against petitioner in Guyana. (ECF No. 1, Pet ¶¶ 17-18, 20-22.) In support of this argument, he has submitted an order from the High Court of the Supreme Court of Judicature of Guyana dated September 28, 2017. (ECF No. 1-1, Order from Guyanese Court at 2 (ordering "Detective and/or the Commissioner of Police to attend before this Court to show cause why Order or Rule Nisi of Certiorari granted herein ought not to be made absolute").) Petitioner submitted the same or very similar document to Magistrate Judge Kuo when arguing to her that the

charges in Guyana had been dismissed. (*See* 17-MJ-597, ECF No. 20, 10/2/17 at 3.) The government subsequently confirmed with the United States Department of State and the Government of Guyana that the murder charges were still pending against petitioner in Guyana. (17-MJ-597, ECF No. 16, Gov't Letter at 1.) Thereafter, Magistrate Judge Kuo issued a Certificate of Extraditability and Order of Commitment.

On its face, the Guyanese order is clearly not an order of dismissal, but instead an order to "show cause" why the murder charge against petitioner should not be dismissed. (ECF No. 1-1, Order from Guyanese Court.) Magistrate Judge Kuo accurately stated as much at the October 2, 2017 hearing. (17-MJ-597, ECF No. 20, 10/2/17 Tr. at 23-24 ("THE COURT: It's an order to show cause . . . why this order should not be made final . . . . [R]ight now [the procedural posture is] still uncertain.").) Moreover, in petitioner's reply brief in the instant action, he concedes that the proceedings against petitioner in Guyana have not been terminated. (ECF No. 10, Pet. Reply at 8 ("The initial motions that Guyanese counsel filed to dismiss the proceedings have been denied and the appeals are pending. The proceedings in Guyana are far from clear . . . ."); ECF No. 10-2, Datadin Aff. ¶¶ 4-5 ("[The] second charge [against Bisram] is still pending. . . . The charge against Bisram is that he 'counseled, procured and

commanded,' the murder of Fiyaz Narinedatt[.]" (emphasis

omitted)).) Therefore, petitioner has not satisfied his burden

to demonstrate that the charges against him have been dismissed,

and his unsupported claim that they have been dismissed and that

probable cause is therefore lacking does not warrant granting

habeas relief.

B. Recantation

Petitioner argues that three of the eyewitnesses who

provided the Guyanese police with statements accusing petitioner

have recanted their statements. (ECF No. 1, Pet. ¶ 20; ECF No.

10, Pet. Reply at 8.) Although petitioner has repeatedly

asserted in this action and in the extradition action that

certain statements were recanted, the first time he provided any

such evidence was in his reply brief in the instant action and

only pertained to one witness, Chunilall. (ECF No. 10-2,

Datadin Aff. ¶¶ 12, 16-23; ECF No. 10-3, Deposition of Chunilall

at 2-8.) Despite apparently having evidentiary proof of

recantations at the time, including that of Chunilall,

petitioner failed to offer the evidence to Magistrate Judge Kuo

during the extradition proceedings. (17-MJ-597, ECF No. 19,

9/26/17 Tr. at 3 ("[T]he witnesses in the original case have all

under sworn testimony, recanted their testimony"); *id.* at 11

("Chumallilo [sic] . . . is one who has completely recanted his

story . . . And we have transcripts that say that.").)

Petitioner provides no excuse for his failure to introduce this evidence before Magistrate Judge Kuo.

As an initial matter, petitioner does not provide the court with any support for his argument that the court may consider on review of the Magistrate Judge's certification new evidence not submitted to the extraditing court when reviewing that court's probable cause finding. Even if the court were to consider the evidence of Chunilall's alleged recantation at this juncture, it would nonetheless find that "there was reasonable ground to believe the accused guilty." *Skaftouros*, 667 F.3d at 157 (citation and internal quotation marks omitted). At most, the newly submitted evidence "poses a conflict of credibility that generally should properly await trial in the requesting country." *In re Pena-Bencosme*, 341 F. App'x 681, 683 (2d Cir. 2009) (alterations omitted) (quoting *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973)). Based on the evidence submitted, it is not clear that Chunilall recanted his statement. Instead, he appears to be responding to leading questions in a manner that suggests confusion on his part. In any event, Chunilall's recantation would not "completely obliterate probable cause[] because it was not the sole evidence against [petitioner]." *Kapoor v. Dunne (Kapoor I)*, No. 12-cv-3196, 2014 WL 1803271, at *3 (E.D.N.Y. May 7, 2014). In addition to Chunilall's statement, the government submitted an autopsy report

identifying the victim's causes of death as "cerebral hemorrhage with multiple skull fractures, ruptured spleen and liver, fractured arm, and pulmonary contusions" (17-MJ-597, ECF No. 1 ¶ 6(b)) and statements from other witnesses implicating petitioner in the victim's murder (17-MJ-597, ECF No.1-1, Ex. 1 at 49-52, 53; 17-MJ-597, ECF No. 1-2, Ex. 2). This evidence certainly satisfies the requirement that there was "evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Skaftouros*, 667 F.3d at 157; *see also Kapoor v. Dunne (Kapoor II)*, 606 F. App'x 11, 14 (2d Cir. 2015) (summary order) (finding that even if recantation evidence were considered there would still be sufficient probable cause to warrant certificate of extradition).

Moreover, under Second Circuit case law, it is unsettled whether evidence of recantation would have been admissible in the extradition hearing, had petitioner offered it at that time. "In the exercise of the extraditing judge's discretion, a fugitive may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country." *Kapoor II*, 606 F. App'x at 12 (quoting *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984)). In *Kapoor II*, the Second Circuit noted a divide among the lower courts with respect to whether "recantation evidence constitutes contradictory evidence" and is therefore inadmissible, but it

15

declined to resolve the issue. *Id.* at 13-14. Here, because petitioner did not attempt to offer any evidence of recantation, the court will not speculate as to whether Magistrate Judge Kuo would have admitted the evidence and, if so, whether it would have affected her probable cause determination.

To the extent that petitioner argues that the witness statements should be disregarded because they are "illegible," "not typed," and "written in script," his argument is unconvincing. (*See* ECF No. 10, Pet. Reply at 7.) First, they are not entirely illegible. Second, petitioner failed to raise this argument in the extradition hearings. Moreover, Guyana provided an affidavit from a police officer summarizing the statements (17-MJ-597, ECF No. 1-1, Ex. 1 at 49-52, 55; 17-MJ-597, ECF No. 8-1 at 47-56), which petitioner did not challenge at the extradition hearings. To the extent petitioner has a viable argument regarding the legibility of the evidence or the validity of the summaries, he waived the issue by failing to raise it during the extradition hearings. *See Lo Duca*, 93 F.3d at 1111.

For the above-stated reasons, Chunilall's alleged recantation does not undermine Magistrate Judge Kuo's probable cause determination.

C. Explanatory Evidence

       Related to his arguments concerning recantation, petitioner contends that the testimony submitted against him was obtained through coercion. (ECF No. 10, Pet. Reply at 4-9; 17-MJ-597, ECF No. 10 at 4-5.) Specifically, petitioner argues that Chunilall was coerced into giving his statement. (ECF No. 1, Pet. ¶ 20.) He does not explain his allegation in the petition, but expands on it in his reply brief, again without sufficient evidentiary support. Essentially, petitioner argues that Chunilall was coerced into giving a statement inculpating petitioner because he cannot read or write and therefore signed a document without knowing what it said. (ECF No. 10, Pet. Reply at 6-7; *see also* 17-MJ-597, ECF No. 20, 10/2/17 Tr. at 19-22.) In the extradition proceedings, petitioner raised a similar issue, alleging that Chunilall's mother instructed him "to put his fingerprint" on a statement "written by local law enforcement," even though he did not know what it said. (17-MJ-597, ECF No. 10 at 4.) Petitioner did not offer any evidence supporting these assertions to Magistrate Judge Kuo, and he only provided evidence in the instant petitioner attached to his reply brief, not the petition.

       During the extradition proceedings, petitioner argued that "other witnesses all testified in court that the original statements that they gave, that was the basis for the probable

cause were all given under police coercion and duress. Each one of them explained that they were in police custody for long periods of time, not being given water, not being given food and being treated harshly." (17-MJ-597, ECF No. 20, 10/2/17 Tr. at 19-20.) Similarly, in his petition for habeas relief, petitioner asserts that "the witnesses who pointed a finger against Mr. Bisram have recanted their testimony and explained that it was coerced." (ECF No. 1, Pet. ¶ 20.) Petitioner did not offer evidentiary support for these assertions of coercion to Magistrate Judge Kuo, nor does he in the instant petition. Because petitioner has not provided any documentary evidence corroborating his bare assertions of coercion as to the witnesses other than Chunilall, the court does not address whether the assertions bear on Magistrate Judge Kuo's probable cause determination.

To the extent petitioner raises the issue of coercion to call into question Chunilall's credibility, the issue is not properly before the court as it should have been raised before Magistrate Judge Kuo in the extradition proceeding. "The credibility of witnesses and the weight to be accorded their testimony is solely within the province of the extraditing magistrate." *Austin*, 5 F.3d at 605 (citation and internal quotation marks omitted).

Similarly, to the extent that petitioner offers evidence of Chunilall's alleged coercion as "explanatory evidence," he misses the mark – much in the same way he did with respect to his recantation argument.  Petitioner has not provided the court with any cases that address the argument he proffers – whether an extraditee may put forth potentially "explanatory evidence" regarding coercion for the first time in a proceeding reviewing a certificate of extradition.  Instead, he confuses the standards for admitting such evidence at an extradition hearing and a district court's standard of review in a habeas proceeding.  As discussed above, in an extradition hearing before a magistrate judge, "the extraditee's right to introduce evidence is [] limited to testimony which explains rather than contradicts the demanding country's proof . . . ." *Shapiro*, 478 F.2d at 905 (citation and internal quotation marks omitted); *see also Kapoor II*, 606 F. App'x at 12.  Whether an extraditee may admit explanatory evidence is within the discretion of the judge ruling on the issue of extradition. *Matter of Sindona*, 450 F. Supp. 672, 685 (S.D.N.Y. 1978).  Such evidence is intended "to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause."  *Id.*  Because petitioner failed to introduce any "explanatory evidence" during the extradition

hearings, this court cannot evaluate whether Magistrate Judge Kuo treated such evidence appropriately. Even if the court were to consider this evidence, it would not find that the evidence has "some reasonable chance of negating a showing of probable cause." *Id.*

Petitioner's own misplaced reliance on *Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016), which is not binding on this court, speaks to petitioner's flawed position. In *Santos*, the extraditee "sought to introduce evidence that incriminating statements made against him by his co-conspirators were obtained by torture, and therefore could not support the probable cause required to extradite." *Id.* at 990. The extradition court, however, found that the evidence was inadmissible because the proposed evidence constituted "contradictory evidence," and because the allegations of torture were contained in statements that included recantations. *Id.* The district court denied the extraditee's request for habeas relief, but the Ninth Circuit reversed, holding that evidence that a witness's confession was obtained through coercion or torture constitutes "explanatory evidence" and is, therefore, generally admissible in extradition proceedings. *Id.* at 1007. Thus, the Ninth Circuit's ruling addresses the admissibility of explanatory evidence of coercion at the extradition hearing *not* on collateral review.

For the above stated reasons, the court finds that petitioner's newly submitted evidence does not impair Magistrate Judge Kuo's probable cause finding. For these same reasons, petitioner's request for an evidentiary hearing is denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied as is petitioner's motion for an evidentiary hearing. The Clerk of Court is respectfully requested to enter judgment denying and dismissing the petition and to close the case.

**SO ORDERED.**

Dated:  October 29, 2018
        Brooklyn, New York

                                    _____/s/_____

                                    **KIYO A. MATSUMOTO**
                                    United States District Judge